## NO. 05-60455

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

RONDEZE HARRIS, MELVIN HARRIS &
DIANE HARRIS

*Appellants*

V.

DOLPH BRYAN IN HIS OFFICIAL
CAPACITY AS SHERIFF OF OKTIBBEHA
COUNTY,  AND SHANK PHELPS IN HIS
OFFICIAL CAPACITY AS DEPUTY SHERIFF
OF OKTIBBEHA COUNTY AND
OKTIBBEHA COUNTY, MISSISSIPPI

*Appellees*

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI

## BRIEF OF APPELLEES

S. RAY HILL, III (MSB#100088)
CLAYTON O'DONNELL WALSH & DAVIS
1005 Jackson Avenue
Post Office Drawer 676
Oxford, Ms 38655
Telephone: (662) 234-0900
Facsimile: (662) 234-3557
*Attorney for Appellees*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons

have an interest in the outcome of this case.  These representations are made in order

that the Judges of this Court may evaluate possible disqualification or recusal:

1.    Rondeze Harris, Melvin Harris, & Diane Harris, Appellants.

2.    Sanford Knott of Sanford Knott & Associates, Counsel for
      Appellants.

3.    Oktibbeha County, MS, Sheriff Dolph Bryan and Deputy Shank
      Phelps, the Appellees.

4.    David D. O'Donnell and S. Ray Hill, III of Clayton O'Donnell Walsh
      & Davis, PLLC, Counsel for Appellees.


**S. RAY HILL, III**
Counsel for Oktibbeha County, MS, Sheriff
Dolph Bryan and Deputy Shank Phelps

i

## STATEMENT REGARDING ORAL ARGUMENT

This appeal involves the straightforward application of well established law.
This case is not complex and the issues have been adequately briefed by the parties.
As such, oral argument would not significantly advance the resolution of the issue
before the Court.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .............................. i

STATEMENT REGARDING ORAL ARGUMENT ........................ ii

TABLE OF CONTENTS ......................................... iii

TABLE OF AUTHORITIES ...................................... iv

INTRODUCTION ............................................... 1

STATEMENT OF THE ISSUE ...................................... 2

STATEMENT OF THE CASE ...................................... 3

STATEMENT OF FACTS ......................................... 5

STANDARD OF REVIEW ........................................ 8

SUMMARY OF THE ARGUMENT ................................. 8

ARGUMENT ................................................. 10

    I.     The standard for municipal liability under 42 U.S.C. § 1983 ..... 10

    II.    The alleged Constitutional violations ....................... 11

    III.   Sheriff Bryan's actions do not form the basis for County liability ................................................ 12

    IV.   The Appellants reliance on Bryan County v. Brown is misplaced . 15

CONCLUSION ................................................ 19

CERTIFICATE OF SERVICE ..................................... 20

CERTIFICATE OF COMPLIANCE ................................ 21

# TABLE OF AUTHORITIES

## CASES

Bryan County, Oklahoma v. Brown, 520 U.S. 397 (1997) . . . . . . . . . . . . . . *passim*

Castellano v. Fragozio, 352 F.3d 939 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . 11

Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528 (5th Cir. 1997) . . . . . . . . . . 8

Freeman v. County of Bexar, 210 F.3d 550 (5th Cir. 2000) . . . . . . . . . . . . . . . . 12

Hand v. Gary, 838 F.2d 1420 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . 11

Hart v. O'Brien, 127 F.3d 424 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . 12

Kentucky v. Graham, 473 U.S. 159 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978) . . . 1,4,11

Palmer v. City of San Antonio, TX, 810 F.2d 514 (5th Cir. 1987) . . . . . . . . . 8,10

Pembaur v. City of Cincinnati, 475 U.S. 469 (1986) . . . . . . . . . . . . . . . . . . *passim*

Webb v. Cardiothoracic Surgery Assocs. of North Texas, 139 F.3d 532 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Wheeler v. Cosden Oil and Chemical Co., 744 F.2d 1131 (5th Cir. 1984) . . . . . 11

## STATUTES

42 U.S.C. Section 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## INTRODUCTION

The Appellants' Section 1983 lawsuit is brought only against Oktibbeha County, Mississippi ("County") and contains claims for false arrest, malicious prosecution, and unreasonable search and seizure.[1] (1: 1-7). The suit arises from the arrest of Rondeze Harris for the murders of two young men, Michael White and Derrick Brantley. The Appellants allege that Sheriff's Deputies gave false information to the Oktibbeha County Justice Court Judge in an effort to obtain an arrest warrant for Rondeze and search warrants to search his car and the Harris home.[2]

At the conclusion of the discovery phase of the case, the Appellees moved for summary judgment. (1: 75-182). After due consideration of said motion, the United States District Court for the Northern District of Mississippi, Judge Michael A. Mills, found that material issues of fact existed as to whether Deputy Phelps and his partner, Deputy Whitfield, had given false information to the Justice Court Judge in order to obtain the warrants at issue. (2: 307) (R.E.: 15). However, the court found that no

---

[1]

The individual defendants, Sheriff Dolph Bryan and Deputy Shank Phelps, have only been sued in their official capacities. It well established that a suit against a defendant in his or her official capacity is nothing more than a suit against the governmental entity itself. Kentucky v. Graham, 473 U.S. 159, 165, (1985) (holding that official capacity suits are another way of pleading an action against an entity of which an officer is an agent.) (quoting Monell v. New York City Dep't. of Soc. Servs., 436 U.S. 658, 690 n. (1978)).

[2]

At the time of the search of his home, Rondeze Harris was living with his parents.

1

issues of material fact existed as to whether the arrest was effectuated pursuant to a policy or custom of Oktibbeha County, or that the actions of Oktibbeha County's requisite policymaker, Sheriff Dolph Bryan, were constitutionally prohibitive so as to bind the County under Pembaur v. City of Cincinnati, 475 U.S. 469 (1986). (2: 308-310) (R.E.: 16-18). Therefore, the court dismissed the case with prejudice.

Aggrieved, the Appellants bring their case to this Court, arguing that the lower court erred in its determination that Sheriff Bryan's actions were insufficient to form the basis of County liability. In support of this position, the Appellants assert that Sheriff Byran's "indirect" participation in the criminal investigation binds the County for purposes of Section 1983 liability pursuant to the United States Supreme Court case of Bryan County v. Brown, 520 U.S. 397 (1997).

As will be shown below, the record is devoid of any evidence sufficient to establish County liability under Pembaur. Moreover, the Appellants' reliance on Bryan County is misplaced. Consequently, the district court's decision should be affirmed in all respects.

### STATEMENT OF THE ISSUE

Whether Sheriff Dolph Bryan's actions in the criminal investigation can form the basis for County liability under Section 1983.

## STATEMENT OF THE CASE

The Appellants, Rondeze Harris, Diane Harris and Melvin Harris, filed their Section 1983 claims against Sheriff Dolph Bryan, in his official capacity, Deputy Shank Phelps, in his official capacity, and Oktibbeha County, Mississippi on October 31, 2003.

After the Appellees timely filed their Answer, the parties proceeded through discovery. Initially, the Appellants chose to conduct little to no discovery in this case. Upon the filing of Appellees' Motion for Summary Judgment, however, the district court granted the Appellants leave to take the depositions of both Sheriff Bryan and Deputy Phelps. After the depositions were taken, the Appellants responded to the Motion for Summary Judgment, arguing that material issues of fact existed regarding whether an Oktibbeha County policy or custom led to a violation of their constitutional rights.[3] (2: 265-266).

---

[3] The Record on Appeal does not reflect that Appellants submitted any affidavits or other tangible evidence as part of their Response to the Motion for Summary Judgment. However, the undersigned's file does reflect that the Appellants attached several exhibits, including deposition excerpts, to the copy of the Response served on the Appellees. These deposition excerpts are the same excerpts that the Appellants now wish to make part of the record pursuant to their Motion to Supplement the Record filed on October 27, 2005. The undersigned believes that the lower court did consider the deposition excerpts attached to the Motion to Supplement in ruling on the Motion for Summary Judgment; and as such, the Appellees have no objection to these excerpts being made part of the Record.

3

The district court first found that issues of material fact did exist regarding whether the Deputies gave false information to the Justice Court Judge in order to secure both the arrest warrant and search warrants. Specifically, the court pointed to apparent inconsistencies between the deposition testimony of Deputy Phelps and the "facts and circumstances sheet" that was attached to the affidavit for a search warrant submitted to the Justice Court Judge. Based on these inconsistencies, the court found that the "evidence arguably suffices to establish fact issues as to whether Deputies Whitfield and Phelps committed, in their individual capacities, constitutional violations for the purposes of a § 1983 action." (2: 307) (R.E.: 15).

However, the court was quick to note that the Appellants had chosen not to sue Deputy Phelps in his individual capacity, choosing instead to concentrate "their efforts against the 'deep pockets' defendant," i.e. Oktibbeha County. Noting the often cited case of Monell v. New York City Dept of Social Services., 436 U.S. 658, 694 (1978), the court found that County liability could only arise in a situation where a constitutional violation was carried out pursuant to a county policy or custom. (2: 308) (R.E.: 16).

The court further noted that Monell liability could attach in cases where the actions of a County policymaker caused the constitutional deprivation under the United States Supreme Court's decision in Pembaur. However, after reviewing the

4

evidence submitted by both parties, the court found that the action of the requisite

policymaker, Sheriff Bryan, did not rise to the level of a constitutional violation. In

so ruling the court held:

> In the court's view, the aforementioned testimony establishes, that Sheriff Bryan, at most, may have merely provided vague directions to help his deputies, but there is no evidence before the court that Sheriff Bryan himself either knowingly or recklessly submitted false evidence before Judge Gillis in order to obtain warrants. Indeed, to reiterate, Sheriff Bryan testified that he had "no idea" what information was relayed to Judge Gillis, and plaintiffs have submitted no evidence which might cast doubt upon this testimony. Plaintiffs have submitted no evidence which might create fact issues regarding the county's (as opposed to individual deputies') potential liability in this case, and defendants' motion for summary judgment is therefore due to be granted.

(2: 309) (R.E.: 17).

Consequently, the court entered an Order dismissing the case with prejudice

on April 19, 2005.  (2: 301).

### STATEMENT OF FACTS

Michael White and Derrick Brantley were reported missing on June 13, 2001

by two of their friends, Jonathan "Chaos" Dickerson and Carlos Walker.  According

to witness statements, the day before, White, Brantley, Dickerson and Walker were

at a recording studio known as "Cheeseland Records."  Around 6:00 that evening,

Rondeze showed up at Cheeseland Records where he spoke with White and Brantley

in the parking lot.   Shortly thereafter, Rondeze left the parking lot driving his

Daewoo automobile, and the two individuals left in White's green Pontiac. That was the last time that White and Brantley were seen alive. (1: 88-91).

The investigating officers, Deputy Phelps and Deputy Whitfield, considered Rondeze a suspect in the murders and held several interviews with Rondeze. During these interviews, Rondeze gave numerous conflicting statements regarding his whereabouts and dealings with the two individuals. Even Rondeze's deposition testimony, when compared to signed statements given the Deputies, raises doubts as to Rondeze's truthfulness in this case. (1: 92-95, 102-108, 132-142).

On June 22, 2001, the bodies of Michael White and Derrick Brantley were discovered at the 16th Section, Baptist Church cemetery in rural Oktibbeha County, Mississippi. Although the bodies were badly decomposed, the Deputies could immediately discern that the young men had been shot in the head, and their bodies dragged into the woods.

A certain eyewitness gave the Deputies a description of a vehicle matching Rondeze's Daewoo automobile that was seen entering the cemetery around the same time as White's green Pontiac on the day of the murders. Michael White's cell phone records also indicated that the last call he received was from Rondeze.

Armed with this information, the Deputies obtained a search warrant for the Harris home and Rondeze's car. (1: 167-174) (R.E.: 63-65). Upon opening the

garage door to seize the vehicle, the Deputies noticed a red like substance that appeared to be blood on the hood of the Daewoo. When the Deputies asked Melvin Harris about the substance, Mr. Harris replied that someone must have put blood on the hood because they had "scrubbed the car clean." The Deputies also ran a Luminal test on the inside of the Daewoo and found traces of blood in the car.

The search of the Harris home resulted in the confiscation of several personal items. In particular, the Deputies confiscated a short story written by Rondeze. This short story, entitled "The Words of an Innocent Man," also contains conflicting statements regarding his meeting with Michael White at the recording studio on the day of the murders. (1: 175-176).

While Rondeze denies that he had anything to do with the murders, it is undisputed that Rondeze had a connection to White, a friend of his from high school. Rondeze also admitted in his deposition that he knew White was a drug dealer and that he had bought drugs from White. (1: 127-128). He also admitted that he knew that White and Brantley, along with Dickerson, were also involved in gang activity. (1: 138-145). The significance of this testimony is that Deputies suspect the murders may have been gang related. In fact, Rondeze even stated in his deposition that Dickerson and a fellow gang member by the name of "Big Bull" attempted to kill him at a club in Lowndes County shortly after White and Brantley's bodies were

7

discovered. (1: 149-153). Deputies believe that the actions of these individuals were motivated by their desire to avenge the deaths of White and Brantley.

Based on all of the information obtained, the Deputies presented their evidence to Justice Court Judge Alton Gillis, who signed an arrest warrant for Rondeze. (1: 177-180). After the arrest, Rondeze was held at the Oktibbeha County jail for approximately a month until he was able to make bail. It is undisputed that Rondeze was never formally indicted for the murders of the two men. The criminal investigation continues to date and Rondeze remains a suspect.

## STANDARD OF REVIEW

The standard of review following the grant or denial of summary judgment is *de novo*. This Court uses the same standard as the district court. Webb v. Cardiothoracic Surgery Assocs. of North Texas, 139 F.3d 532, 536 (5th Cir. 1998) (citing Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997)).

## SUMMARY OF THE ARGUMENT

In order to establish municipal liability, the Appellants must prove that a policy of the County was the **moving force** behind the constitutional violation. Palmer v. City of San Antonio, TX, 810 F. 2d. 514, 516 (5th Cir. 1987).

The Appellants allege that the actions of the County's policymaker, Sheriff Dolph Bryan, form the basis for County liability in this case. While a County may

be held liable for the single action of a policymaker in certain circumstances pursuant to <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469 (1986), there is no evidence in the Record to suggest that Sheriff Bryan took any action to cause the Appellants to suffer a constitutional deprivation.

Recognizing this, the Appellants ask this Court to expand the holding in <u>Pembaur</u> to provide that County liability can be premised on even remote or indirect actions on the part of a policymaker. In support of this proposition, the Appellants cite to the case of <u>Bryan County v. Brown</u>, 520 U.S. 397 (1997).

Clearly, <u>Bryan County</u> is distinguishable from the case at bar. First, unlike <u>Bryan County</u>, this is not a "negligent hiring" or "failure to train case." A simple review of the Record shows that the Complaint contains no allegations of failure to train or negligent hiring, nor did the Appellants argue at the summary judgment phase that said actions were a basis for County liability.

Furthermore, there is no evidence in the record to suggest that Sheriff Bryan negligently hired Deputy Phelps and Whitfield, or that some sort of lack of training led them to give allegedly false information to the Justice Court Judge. And of course, the Appellants fall woefully short of proving that Sheriff Bryan acted with the requisite intent necessary to establish municipal liability. Contrary to the Appellant's assertions, the failure of Sheriff Bryan to review the "facts and circumstances sheet"

prior to its submission to the Justice Court Judge is simply not a reckless or "deliberately indifferent" act. For example, there is no evidence in the Record to suggest that Sheriff Bryan was aware of some sort of proclivity of the Deputies to submit false information in the procurement of warrants, or that his department has ever been accused of such actions in the past.

Consequently, there is simply no basis for a finding that any action on the part of Sheriff Bryan, indirect or otherwise, caused the Appellants to suffer a constitutional deprivation. For this reason, the district court's grant of summary judgment should be affirmed.

## ARGUMENT

The district court correctly determined that no genuine issues of material fact exist in regard to whether the alleged constitutional violations were a result of a policy or custom of Oktibbeha County.

### I.    The standard for municipal liability under 42 U.S.C. § 1983.

In order to establish municipal liability, the Appellants must prove that a policy of the County was the **moving force** behind the constitutional violation. Palmer v. City of San Antonio, TX, 810 F. 2d. 514, 516 (5th Cir. 1987). In other words, a local county government is not liable for the acts of its employees simply because it employs the individual alleged to have caused the constitutional deprivation. Bryan

County, TX v. Brown, 520 U.S. 397, 404 (1997). In fact, there is no such thing as *respondeat* *superior* liability under Section 1983. Monell v. New York City Department of Social Services, 436 U.S. 658, 691 (1978).

## II.    The alleged Constitutional violations

The Appellants appear to concede the malicious prosecution claim altogether, and focus their efforts on the false arrest and unreasonable search and seizure claims.[1]

As for the false arrest claim, it is well established in the Fifth Circuit that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the officers from suit. Wheeler v. Cosden Oil and Chemical Co., 744 F.2d 1131, 1132 (5th Cir. 1984). The Fifth Circuit has even held that "an officer who acted with malice in procuring the warrant or the indictment will not be liable if the facts supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or a grand jury, for that intermediary's independent decision breaks the causal chain and insulates the initiating party." Hand v. Gary, 838 F.2d 1420, 1427 (5th Cir. 1988).

---

[1]The Fifth Circuit refused to recognize a Section 1983 claim premised on malicious prosecution in the case of Castellano v. Fragozio, 352 F. 3d 939 (5th Cir. 2003).

In the case at bar, it is undisputed that Rondeze was arrested pursuant to a warrant issued by Oktibbeha County Justice Court Judge, Alton Gillis. In light of the arrest warrant, the Appellants must first come forward with some evidence tending to show that deputies "recklessly provided false information" to Judge Gillis in order to obtain a warrant. Freeman v. County of Bexar, 210 F.3d 550, 553 (5th Cir. 2000).

The same standards apply to the Appellants' unreasonable search and seizure claim. Given the fact that search warrants were obtained, the Appellants will also have to show that deputies provided false information, essential to probable cause, in order to obtain the warrant. Hart v. O'Brien, 127 F.3d 424 (5th Cir. 1997).

In this case, the district court found that the Appellants met their burden in regard to the underlying Constitutional violations. However, the court found that these violations could not have been caused by a County policy or custom. The Appellants, of course, take exception to this ruling, and argue that Sheriff Bryan's actions related to the criminal investigation bind the County.

## III.    Sheriff Bryan's actions do not form the basis for County liability.

The Appellants cite the case of Pembaur v. City of Cincinnati, 475 U.S. 469 (1986) for the proposition that County liability may arise from a single decision of a policymaking official.

In Pembaur, the Plaintiff brought a Section 1983 claim against Hamilton County and others after deputy sheriffs forced their way into his office to arrest several of his employees who had failed to appear before a grand jury. Pembaur, 475 U.S. at 473. Prior to entering the office, the police officers called the County Prosecutor for instructions. He advised them to "go in and get [the witnesses]." Id.

During the lower court proceedings, the county conceded that the search of the plaintiff's office violated his Fourth Amendment rights. Id. at 478 n.5. Nevertheless, the trial court dismissed the Section 1983 claim against the county, finding that the search of the office was not carried out pursuant to a county policy or custom. Id. The Sixth Circuit affirmed the ruling of the trial court. Id. The United States Supreme Court granted certiarori on the issue of whether a single act of a policymaker could form the basis for county liability under Section 1983. Id.

In reversing the lower courts, the Supreme Court held that a single decision of a policymaker could indeed form the basis for county liability in certain circumstances. Id. at 480. The court held that the deputies had found themselves in a tough situation on the day in question. Id. at 484. When they called the county prosecutor for direction, he ordered them to forcibly enter the office and remove the employees. As the Court stated, "[t]hat decision directly caused the violation of the petitioner's Fourth Amendment rights." Id.

13

Pembaur is clearly distinguishable from the case at bar. First, it is undisputed that no evidence exists that Sheriff Bryan gave recklessly false information to the Justice Court Judge in order to obtain the search and arrest warrants at issue. In fact, the Sheriff has no recollection of even speaking with the Judge about the warrant, and even went so far as to say it would be rare for him to do so. (2: 277-279) (R.E.: 22-24).

On the contrary, the Deputy Sheriffs were in charge of the day to day aspects of the investigation, and it is undisputed that they were responsible for obtaining the warrants at issue. (2: 278) (R.E.: 23). While the Sheriff admitted that he spoke with the Deputies about the ongoing investigation, there is absolutely no evidence to suggest that he instructed the Deputies to give the Judge false information, or that he was aware that anything the Deputies were telling him about the investigation was false. Furthermore, there is no evidence that Sheriff Bryan even reviewed the "facts and circumstances sheet" which the Appellants allege contains the false statements.

In fact, Sheriff Bryan even denied that he authorized the Deputies to seek the warrants in the first place. As Sheriff Bryan stated in his deposition:

> Q: When they obtained the search warrants and the subsequent arrest warrant for Rondeze Harris, that was authorized by yourself?
> A: I don't think that's a fair representation of the facts. I didn't never tell them that they could or they couldn't do it. I would look at their probable cause, and I agreed with them that they had probable cause.

14

Q: Okay.
A: And I told them to publish that to the Justice Court Judge. And if he agreed and issued a warrant, then that was fine.

(R.E.: 35-37).

The Appellants undoubtedly realize that the type of direct action by a policymaker that existed in Pembaur is not present in this case. For this reason, the Appellants ask this Court to expand the Pembaur holding to cases involving indirect action on the part of the policymaker. In support of this tenuous position, the Appellants point this Court to the case of Bryan County v. Brown, 520 U.S. 397 (1997), wherein the plaintiffs sought to predicate county liability on a sheriff's negligent hiring decision.

## IV.     The Appellants' reliance on Bryan County v. Brown is misplaced.

In this case, the Appellants argue that Sheriff Bryan, the official policymaker for the County, indirectly participated in the alleged constitutional violations by allowing false information to be submitted to the Justice Court Judge. In support of this proposition, the Appellants rely on the United States Supreme Court decision of Bryan County v. Brown, 520 U.S. 397 (1997).

Bryan County, however, is very different from the case at bar. In Bryan County, the plaintiff was a passenger in an automobile whose driver pulled a "u-turn" to avoid a roadblock. Bryan County, 520 U.S. at 400. When deputies pulled the car

15

over, a reserve deputy named Stacy Burns used an arm bar technique to pull the plaintiff to the ground, causing the plaintiff to suffer severe injury to her knees. Id.

The plaintiff brought suit against the county, arguing that the county was liable for the decision of the sheriff to hire Burns. Id. at 401. Apparently, Burns had quite a record, including assault and battery. Id. The plaintiff claimed that the sheriff, acting as the official policymaker for the county, negligently hired Burns and that this negligence formed the basis for county liability. Id. at 402.

At the conclusion of the trial, the jury found in favor of the plaintiff. After the Fifth Circuit affirmed, the county appealed to the United States Supreme Court, who granted certiorari on the issue of whether the county was properly held liable for the sheriff's single decision to hire Burns. Id.

In reversing the lower courts, the United States Supreme Court noted that it was not enough for a plaintiff to simply identify the act of a policymaker that is "properly attributable to the municipality." Id. at 404. On the contrary, the Court found as follows:

> The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

Id.

16

The court also found that a Section 1983 plaintiff is required to prove the requisite state of mind requirement, namely that the policymaker intentionally deprived the plaintiff of a protected right through actions that were taken with "deliberate indifference" to "their known or obvious consequences." Id. at 405-407. The Court also stated that when a plaintiff asserts that indirect hiring or training decisions by a policymaker result in a constitutional depravation, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees." Id. at 405.

Clearly, Bryan County provides no support for the Appellant's position. First, unlike Bryan County, this is not a "negligent hiring" or "failure to train case." A simple review of the record shows that the Complaint contains no allegations of failure to train or negligent hiring, nor did the Appellants argue at the summary judgment phase that said actions were a basis for County liability.

Furthermore, there is no evidence in the record to suggest that Sheriff Bryan negligently hired Deputy Phelps and Whitfield, or that some sort of lack of training led them to give allegedly false information to the Justice Court Judge. And of course, the Appellants fall woefully short of proving that Sheriff Bryan acted with the requisite intent necessary to establish municipal liability. Contrary to the Appellant's assertions, the failure of Sheriff Bryan to review the "facts and circumstances sheet"

17

prior to its submission to the Justice Court Judge is simply not a reckless or "deliberately indifferent" act. For example, there is no evidence in the record to suggest that Sheriff Bryan was aware of some sort of proclivity of the Deputies to submit false information in the procurement of warrants, or that his department has ever been accused of such actions in the past.

Clearly, just like the plaintiffs in <u>Bryan County</u>, the Appellants seek to blur the lines between the holding in <u>Pembaur</u>, a clear cut case of direct action on the part of a policymaker, and cases where some sort of indirect action on the part of a policy maker allegedly leads to a constitutional violation. In fact, the Appellants have been unable to clearly articulate exactly what type of indirect action on the part of Sheriff Bryan led to the arrest of Rondeze Harris or the search of the Harris home.

Regardless, whether the Appellants seek to hold the County liable for negligent hiring or for the limited role Sheriff Bryan played in the investigation, one thing is crystal clear: the Appellants have been unable to meet the rigorous standards of culpability and causation necessary to establish County liability.

To put it simply, the Appellants case is based on nothing more than a theory of *respondeat superior*. As the trial court recognized, municipal liability in the Section 1983 context can never be premised simply on the negligent conduct of a municipal employee. Given Sheriff Bryan's limited role in the investigation, as well

as the fact that no evidence exists that he instructed the Deputies to give false information to the Justice Court Judge, Oktibbeha County may not be held liable in this case.

## CONCLUSION

For the above reasons, the Appellees respectfully requests that the district court's decision be affirmed in all respects.

Respectfully submitted, this the *10th* day of November, 2005.

S. RAY HILL, III, ESQ. (#100088)

CLAYTON O'DONNELL WALSH & DAVIS, PLLC
Post Office Drawer 676
1005 Jackson Avenue East
Oxford, Mississippi 38655-0676
Telephone: (662) 234-0900
Facsimile: (662) 234-3557

## CERTIFICATE OF SERVICE

I, S. Ray Hill, III, hereby certify that I have this day served, via United States mail, postage prepaid, a true and correct copy of the above and foregoing Brief of Appellees to:

> Sanford E. Knott, Esq.
> Sanford Knott & Associates, P.A.
> Post Office Box 1208
> Jackson, MS 39215-1208

This the _10th_ day of November, 2005.

S. Ray Hill, III

## CERTIFICATE OF COMPLIANCE

Pursuant to FED. R. App. P. 32(a)(7)(B) and 5th Cir. R. 32.2, the undersigned certifies this brief complies with the type volume limitations of 5th Cir. R. 32.2.7(b), for the following reasons:

I.    Exclusive of the exempted portions in 5th Cir. R. 32.2.7(b)(3), the brief contains 5,095words.

II.    The brief has been prepared in proportionally-spaced typeface using Word Perfect 8.0 in Times New Roman 14pt.

III.    I understand that the material misrepresentation in completing this certificate, or circumvention of the type-volume limits in FED. R. APP. P. 32(a)(7)(B) and 5th Cir. R. 32.2, may result in the Court's striking the brief and imposing sanctions against me.

S. RAY HILL, III
Counsel for Oktibbeha County, MS, Sheriff
Dolph Bryan and Deputy Shank Phelps

21